IN THE SUPREME COURT OF NORTH CAROLINA

No. 255A17

Filed 21 December 2018

BILLY BRUCE JUSTUS, as Administrator of the Estate of Pamela Jane Justus

v.

MICHAEL J. ROSNER, M.D.; MICHAEL J. ROSNER, M.D., P.A.; FLETCHER HOSPITAL, INC. d/b/a PARK RIDGE HOSPITAL; ADVENTIST HEALTH SYSTEM; and ADVENTIST HEALTH SYSTEM SUNBELT HEALTHCARE CORPORATION

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, ___ N.C. App. ___, 802 S.E.2d 142 (2017), affirming an order awarding costs, affirming in part and reversing in part an order granting plaintiff's motion to alter or amend judgment, and vacating an amended judgment, all entered on 3 March 2015 by Judge Zoro J. Guice, Jr. in Superior Court, Henderson County, and remanding for a new trial on damages. On 28 September 2017, the Supreme Court allowed defendants' petition for discretionary review of additional issues. Heard in the Supreme Court on 12 March 2018.

*Law Offices of Wade Byrd, P.A., by Wade E. Byrd, for plaintiff-appellee.*

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for defendant-appellants, Michael J. Rosner, M.D. and Michael J. Rosner, M.D., P.A.*

HUDSON, Justice.

Here we consider whether the trial court erred in setting aside the jury's verdict in this medical malpractice suit on the ground that the jury awarded

insufficient damages to plaintiff Billy Bruce Justus (plaintiff) after finding that defendant Michael J. Rosner, M.D. performed unnecessary surgeries on plaintiff's now-deceased wife, Pamela Jane Justus. For the reasons stated below, we affirm the decision of the Court of Appeals to remand this action for a new trial.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Pamela came to Dr. Rosner in 2000 after suffering from serious neurological symptoms for many years and being treated by a variety of neurologists and pain clinics since the mid-1990s. She complained to Dr. Rosner of severe pain in the back of her neck and right temple as well as diminished memory and cognition, dizziness, and balance problems. Based upon his examination, Dr. Rosner discussed with Pamela the possibility of performing a laminectomy surgery to decompress her spinal cord. Pamela elected to undergo the laminectomy, which Dr. Rosner performed in June 2000.

By December 2000, Pamela reported to Dr. Rosner that she was doing "horribly" and experiencing severe neck pain. Based upon Dr. Rosner's advice, Pamela agreed to undergo a C1 laminectomy and suboccipital craniectomy, which Dr. Rosner performed in February 2001. Dr. Rosner last saw Pamela as a patient on 21 March 2001. During that appointment, she was advised to return in two months and to contact Dr. Rosner's office several weeks beforehand if she had not improved significantly so that an MRI could be ordered. Pamela called Dr. Rosner's office on 29 May 2001 complaining of severe neck pain and an inability to hold her head up.

Dr. Rosner's physician's assistant advised Pamela to return for an MRI, but Pamela refused to return, stating that she was "afraid" to come back to the office and that her insurance was no longer accepted.

Over the following months and years, Pamela saw numerous doctors for diagnosis and treatment of her neck condition. In just the year after she stopped seeing Dr. Rosner, she made at least nine medical visits for various reasons and procedures, including: an MRI in August 2001; possible treatments for vocal cord damage stemming from Dr. Rosner's February 2001 surgery; neurological evaluations at multiple practices; and injections for nerve pain.

In April 2004 Domagoj Coric, M.D. performed a fusion surgery on Pamela's neck to address her inability to lift her head off of her chest. After that surgery did not solve the problem, Dr. Coric performed a second operation in 2011. Pamela passed away in September 2012; her death certificate listed non-alcohol related kidney and liver problems as her immediate cause of death.

In June 2003, plaintiff and Pamela filed suit against Dr. Rosner; and his medical practice, Michael J. Rosner, P.A. (defendants); and Fletcher Hospital, Inc. d/b/a Park Ridge Hospital, Adventist Health System, and Adventist Health System Sunbelt Healthcare Corporation (the hospital defendants). The complaint included claims against Dr. Rosner for negligence, lack of informed consent, fraud, loss of consortium, the value of services rendered to Pamela, and willful and wanton conduct. The thrust of the suit was that Dr. Rosner performed unwarranted,

unnecessary, and contraindicated experimental surgeries on Pamela and failed to fully inform her of their novelty and risks. This case, along with twenty-four related actions against Dr. Rosner, was designated as exceptional under Rule 2.1 of the General Rules of Practice for the Superior and District Courts. After Pamela passed away in 2012, plaintiff, in his capacity as administrator of her estate, was substituted as a party plaintiff for Pamela and allowed to amend the complaint to assert claims for wrongful death and civil conspiracy.

The case was tried in Superior Court, Henderson County, beginning on 28 July 2014 before Judge Zoro J. Guice, Jr. During the trial, Dr. Rosner offered the testimony of several expert witnesses who suggested that Pamela could have avoided the chin-on-chest deformity she developed as a result of Dr. Rosner's surgeries if she had returned specifically to him for follow-up care. For instance, Michael Seiff, M.D. testified in pertinent part as follows:

> Q. And to your knowledge, did [Pamela] follow up as instructed *with Dr. Rosner*?
>
> A. No.
>
> Q. Had she done so, as an expert in the field of neurosurgery, do you believe that this chin-on-chest deformity could have been avoided with appropriate follow-up by [Pamela] *with Dr. Rosner*?
>
> A. Absolutely.

(Emphases added.) Similarly, an exchange with Konstantin Slavin, M.D. went as follows:

Q. . . . [D]id you know that Pam Justus stopped going to Dr. Rosner and was essentially -- I don't want to say lost in follow-up. She refused to return *to Dr. Rosner* following her second operation. Were you aware of that?

A. That's my understanding, yes.

Q. Do you believe, Doctor, had she followed up *with Dr. Rosner*, that this deformity, this chin-to-chest, this kyphosis, could have been caught earlier and remedied earlier, had she simply been following up as she should have?

A. That's a definite possibility, yes.

(Emphases added.) Likewise, the examination of Donald Richardson, M.D. included the following exchange:

Q. . . .[H]ave you, as a neurosurgeon, who's looked at the films, who's looked at the records, have you formed an opinion to a reasonable degree of medical certainty about whether or not Pam Justus's failure to follow up *with Dr. Rosner* was a proximate cause of her development of chin-on-chest deformity? The question is simply yes or no.

A. Yes.

(Emphasis added.)

The jury returned its verdict on 25 September 2014 finding defendants liable for negligence and finding no liability against defendants on other grounds or against the hospital defendants.[1] On its verdict form, the jury found that Pamela had suffered damages in the amount of $512,162.00 but that her damages should be

---

[1] Plaintiff dismissed his individual claims during the charge conference.

reduced by $512,161.00 because of her "unreasonable failure . . . to avoid or minimize her damages." Accordingly, the trial court entered judgment in the amount of $1.00.

On 31 October 2014, plaintiff moved to alter or amend the judgment under Rule 59 of the North Carolina Rules of Civil Procedure. Specifically, plaintiff asserted that the jury's finding regarding Pamela's failure to mitigate damages was "contrary to the greater weight of credible testimony" and "contrary to law," and displayed "a manifest disregard of the jury to the instructions of the [c]ourt." Plaintiff asserted that the principal evidence to support the mitigation finding was that Pamela did not return to Dr. Rosner for follow-up care and that, as a matter of law, "she had no duty to seek medical attention specifically from Dr. Rosner rather than from other health care providers." Plaintiff also argued that the evidence showed that Pamela affirmatively took reasonable steps to mitigate damages by seeing numerous doctors in the wake of Dr. Rosner's negligent surgeries.

Following a hearing, the trial court entered an order on 3 March 2015 granting plaintiff's Rule 59 motion. Regarding the jury's mitigation of damages verdict, the court found that (1) Dr. Rosner's expert witnesses in neurology "testified that Mrs. Justus' condition could have been ameliorated had she promptly sought follow-up care from Dr. Rosner" and (2) "the overall impression created by these witnesses (and thus communicated to the jury) is that Mrs. Justus had an obligation to return specifically to *Dr. Rosner*; and that, by failing to do so, she allowed her condition to worsen." The court further found that "[t]here was no evidence presented that Ms.

Justus unreasonably delayed trying to have her problems diagnosed and corrected" and that, "[g]iven the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages." In addition, the court found that "the amount of the jury's mitigation finding—i.e., that Mrs. Justus' condition was almost *entirely her own fault* (except for $1.00)—vastly exceeds, and is grossly disproportionate to, the extent to which, according to Dr. Rosner's neurosurgical experts, her condition could have been ameliorated had she timely sought follow-up care."

In its conclusions of law, the trial court determined that "[p]atients have no legal obligation to seek medical treatment from any particular health care provider" and that "[t]he testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading." The court also concluded that "Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages" and that the "jury's $1.00 damage award is manifestly inadequate." The court further concluded that the "jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts." The court also noted that "[e]ven aside from the lack of evidence to support *any* mitigation finding

at all, the influence of passion or prejudice is further manifested in the grossly excessive *amount* of the jury's mitigation finding."

As a result of these and other findings and conclusions, the trial court set aside the jury's verdict and the court's judgment and entered an amended judgment awarding damages in the amount of $512,162.00. The court also entered an order awarding costs to plaintiff in the amount of $175,547.59. Defendants appealed from the order granting the motion to alter or amend the judgment, the amended judgment, and the order awarding costs.

At the Court of Appeals, defendants argued that the trial court erred by setting aside the jury verdict based on the mitigation of damages issue. In the alternative, they argued that even if the trial court did not err in granting the Rule 59 motion, it erred by entering an amended judgment rather than granting a new trial on all issues, including the defense of contributory negligence, upon which the trial court had declined to instruct the jury. Defendants also argued that the trial court's award of costs constituted reversible error. The Court of Appeals issued a partially divided opinion on 20 June 2017 in which the majority upheld the trial court's decisions to set aside the jury verdict, deny defendants' request to instruct the jury on contributory negligence, and award costs. *Justus v. Rosner*, ___ N.C. App. ___, 802 S.E.2d 142 (2017). It concluded, however, that the trial court erred by entering an amended judgment rather than ordering a new trial. The Court of Appeals vacated the amended judgment and remanded for a new trial on damages. The dissent agreed

with the majority that the trial court properly refused to deliver a contributory negligence instruction and that, once it decided to set aside the verdict, the trial court should have ordered a new trial rather than entering an amended judgment; however, the dissenting judge disagreed that the trial court had sufficient grounds to set aside the verdict or enter its order of costs. Defendants filed a notice of appeal to this Court based on the dissent. We also allowed defendants' petition for discretionary review on the issues of contributory negligence and whether the new trial should again address defendants' liability for Pamela's injuries, rather than being confined only to the issue of damages.

## II. ANALYSIS

### A. Rule 59

In their appeal based on the dissenting opinion, defendants contend that the Court of Appeals majority erred by upholding the trial court's decision to grant plaintiff's motion to set aside the jury verdict under Rule 59(a). Although the trial court and the Court of Appeals touched upon a number of potential grounds for setting aside the verdict, we need only conclude that one ground supports the trial court's decision to grant relief pursuant to Rule 59 in order to affirm that ruling. Rule 59 states, in part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues" based upon, among other grounds, "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." N.C. R. Civ. P. 59(a)(7). Here the trial court concluded that "Dr. Rosner presented no legally

competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages," that "[t]he jury's $1.00 damage award is manifestly inadequate," and that "the influence of passion or prejudice is further manifested in the grossly excessive *amount* of the jury's mitigation finding," which falls within Rule 59(a)(7)'s ground of "[i]nsufficiency of the evidence to justify the verdict."

"[A] motion for a new trial for insufficiency of the evidence pursuant to Rule 59(a)(7) is addressed to the discretion of the trial court." *In re Will of Buck*, 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999) (citing *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 380-81, 329 S.E.2d 333, 343-44 (1985)); *see also Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982) (plurality opinion) ("It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." (citing *Goldston v. Chambers*, 272 N.C. 53, 59, 157 S.E.2d 676, 680 (1967))). Accordingly, "in the absence of an abuse of discretion, a trial court's ruling on a motion for a new trial due to the insufficiency of evidence is not reversible on appeal." *In re Buck*, 350 N.C. at 624, 516 S.E.2d at 860.

We have explained that in the Rule 59(a)(7) context, the phrase " 'insufficiency of the evidence' means that the verdict 'was against the greater weight of the evidence.' " *Id.* at 624, 516 S.E.2d at 860 (quoting *Nationwide Mut. Ins. Co. v.*

*Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979)). Therefore, "[t]he trial court has discretionary authority to appraise the evidence and to 'order a new trial whenever in [its] opinion the verdict is contrary to the greater weight of the credible testimony.' " *Id.* at 624-25, 516 S.E.2d at 860 (quoting *Britt v. Allen*, 291 N.C. 630, 634, 231 S.E.2d 607, 611 (1977)). Finally, in applying the abuse of discretion standard, "[a]n appellate court should not disturb a *discretionary* Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *Id.* at 625, 516 S.E.2d at 861 (quoting *Anderson v. Hollifield*, 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (emphasis added)).

Here, the trial court's order granting plaintiff's Rule 59 motion included the following findings of fact:

> 5. Dr. Rosner contended at trial that Mrs. Justus unreasonably failed to mitigate her damages.
>
> 6. To support the foregoing defense, Dr. Rosner called four neurosurgical experts (Drs. Michael Seiff, Donald Richardson, Peter Jannetta, and Konstantin Slavin) to testify on his behalf.
>
> 7. These neurosurgical experts testified that Mrs. Justus' condition could have been ameliorated had she promptly sought follow-up care from Dr. Rosner.
>
> 8. Based upon the Court's opportunity to observe the evidence as it was presented and the attendant circumstances, together with the demeanor of Dr. Rosner's neurosurgical experts and considering all of their testimony in context, this Court finds that the overall

impression created by these witnesses (and thus communicated to the jury) is that Mrs. Justus had an obligation to return specifically to *Dr. Rosner*; and that, by failing to do so, she allowed her condition to worsen.

9. That Dr. Rosner elicited this testimony from four different experts, moreover, intensified its cumulative impact upon the jury.

10. There was no evidence presented that Ms. Justus unreasonably delayed trying to have her problems diagnosed and corrected.

11. On the contrary, her attempts to mitigate her damages were reasonable and all that could be expected.

12. Given the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages.

The trial court's conclusions of law included the following:

1. Patients have no legal obligation to seek medical treatment from any particular health care provider.

2. Mrs. Justus therefore had no duty to return to Dr. Rosner, rather than to other health care providers.

3. The testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading.

4. The misleading effect of the foregoing testimony was compounded by its repetition from four different expert witnesses.

5. Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus

unreasonably failed to mitigate her damages.

The Court of Appeals majority held that "the trial court's actions, in determining evidence of mitigation of damages was insufficient to justify the verdict, did not amount to an abuse of discretion." *Justus*, ___ N.C. App. at ___, 802 S.E.2d at 151. We agree.

Regarding a plaintiff's duty to mitigate damages,

> [t]he rule in North Carolina is that an injured plaintiff, whether h[er] case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If [s]he fails to do so, for any part of the loss incident to such failure, no recovery can be had. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable.

*Miller v. Miller*, 273 N.C. 228, 239, 160 S.E.2d 65, 73-74 (1968) (first citing *Johnson v. Atl. Coast Line R.R., Co.*, 184 N.C. 101, 113 S.E. 606 (1922); and then citing 22 Am. Jur. 2d *Damages* §§ 30-32 (1965)).

In their brief to this Court, defendants challenge the trial court's determination that the jury's finding that Pamela failed to mitigate all but $1.00 in damages resulted from the impression created by defendants' experts that Pamela's damages were principally caused by her failure to return specifically to Dr. Rosner for follow-up care after the second surgery he performed on her. As the excerpts from the expert testimonies set forth above show, however, there was evidence at trial to support the trial court's finding that defendants' experts created the impression that Pamela had

a duty to return to Dr. Rosner in particular and that this impression influenced the jury's decision to award only nominal damages.[2]

Moreover, defendants do not argue that a patient's failure to seek additional treatment from the doctor who provided negligent medical care to her—care which caused or contributed to the very harm the patient needed to mitigate—constitutes a failure to mitigate damages. Defendants do not dispute that a plaintiff is required only to "exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong." *Miller*, 273 N.C. at 239, 160 S.E.2d at 74. We have already noted that the evidence showed that, after leaving Dr. Rosner's care, Pamela *did* seek and obtain further medical care from a variety of other medical professionals, including undergoing an MRI on 17 August 2001—the same diagnostic test recommended to Pamela by Dr. Rosner's physician's assistant during the 29 May 2001 phone call.

The jury's determination of "failure . . . to minimize damages" is further undermined by the evidence that much of the pain and suffering Pamela experienced

---

[2] Defendants find "particularly troublesome" that in Finding No. 8 the trial court characterized the "demeanor" of defendants' experts as contributing to an impression that Pamela had an obligation to return specifically to Dr. Rosner and that she allowed her condition to worsen by failing to do so. This challenge to the trial court's discussion of demeanor is unpersuasive because one of the very reasons we apply an abuse of discretion standard to a trial court's ruling on a Rule 59 motion is that the trial judge is present at trial and is thus in the best position to assess the impact of witnesses' testimony on the jury. *See In re Buck*, 350 N.C. at 628, 516 S.E.2d at 863 ("Only the trial court has directly observed the evidence as it was presented and the attendant circumstances, *as well as the demeanor and characteristics of the witnesses*." (emphasis added)).

as a result of Dr. Rosner's negligent surgeries occurred before she would have had the opportunity to mitigate damages. Even so, the jury found that she completely failed to mitigate damages except for $1.00.

Given this evidence, we cannot say that the trial court's decision to set aside the jury's verdict was an abuse of discretion because we are not "convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." *In re Buck*, 350 N.C. at 625, 516 S.E.2d at 861 (quoting *Anderson*, 345 N.C. at 483, 480 S.E.2d at 663)). As we have reiterated over the years,

> our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity [of] a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observa[tions] of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires in a certain case.

*Id.* at 626, 516 S.E.2d at 861 (quoting *Worthington*, 305 N.C. at 487, 290 S.E.2d at 605). The trial court here was in the best position to determine whether the jury's verdict on mitigation of damages went against the greater weight of the evidence, including whether the jurors were affected by the experts' suggestion that Pamela's failure to return specifically to Dr. Rosner caused her health to deteriorate.

Accordingly, we affirm the Court of Appeals majority's conclusion that the trial court did not abuse its discretion in setting aside the verdict based on Rule 59(a)(7).[3]

## B. Costs

In the second issue in their appeal based on the dissenting opinion, defendants argue that the Court of Appeals majority erred by affirming the trial court's assessment of $175,547.59 in costs against them. Defendants contend that the trial court lacked authority to assess expert witness costs for experts whose testimony concerned the hospital defendants—which the jury did not find liable—rather than Dr. Rosner.

"In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes." N.C.G.S. § 6-20 (2017). N.C.G.S. 7A-305(d) states in pertinent part:

> (d) The following expenses, when incurred, are assessable or recoverable, as the case may be. The expenses set forth in this subsection are complete and exclusive and constitute a limit on the trial court's discretion to tax costs pursuant to G.S. 6-20:
>
> (1) Witness fees, as provided by law.
>
> . . . .

---

[3] Like the Court of Appeals majority, we decline to address the appropriateness of awarding relief under other subsections of Rule 59.

> (10) Reasonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts.
>
> (11) Reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings.

*Id.* § 7A-305(d) (2017). Although the assessment of costs is generally within the discretion of the trial court, *see id.* § 6-20, "when the validity of an award of costs hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions, the issue before the appellate court is one of statutory construction, which is subject to de novo review." *Lassiter ex rel. Baize v. N.C. Baptist Hosps., Inc.*, 368 N.C. 367, 375, 778 S.E.2d 68, 73 (2015) (citation omitted).

Here plaintiff requested various costs from defendants, including $89,789.84 for depositions, $85,757.75 for experts at trial, and $458,089.30 for "additional expert witness fees." The trial court ordered that defendants pay plaintiff a lump sum of $175,547.59, which totals the costs requested for depositions and experts' trial testimony.

Defendants contend that this assessment was improper because it included fees connected to the trial testimonies of experts—Drs. Arthur Caplan, Brian Currie, and David Barton Smith—who testified against the hospital defendants rather than against Dr. Rosner. That is, defendants argue, the testimonies of these medical experts cannot support an award of costs against defendants because "[e]ach of these

experts expressly did not offer criticisms of Dr. Rosner and, instead, limited their testimony to criticisms of the Hospital Defendants, whom the jury found not liable."

The Court of Appeals rejected this argument, concluding that "defendant [Rosner] fails to establish that ordering payment of these expert fees was an abuse of discretion," *Justus*, ___ N.C. App. at ___, 802 S.E.2d at 156 (citation omitted). The dissent, however, rejected both the majority's result as well as the abuse of discretion standard of review it employed. The dissent stated that the question of which experts' trial testimony could support the assessment of costs against defendants is a legal question because it "hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions . . . , which is subject to de novo review." *Id.* at ___, 802 S.E.2d at 160 (Tyson, J., concurring in part and dissenting in part) (quoting *Lassiter ex rel. Baize*, 368 N.C. at 375, 778 S.E.2d at 73). The dissent then concluded that "the trial court misinterpreted N.C. Gen. Stat. § 7A-305(d)(11) and awarded costs for three of plaintiff's expert witnesses, who offered testimonies directed against actions by the hospital defendant[s], which were acquitted by the jury, and did not testify to Dr. Rosner's standard of care or alleged acts of negligence." *Id.* at ___, 802 S.E.2d at 160.

These experts' testimonies did, however, address issues relating to Dr. Rosner in addition to the hospital defendants. For instance, both Dr. Caplan and Dr. Smith testified that Dr. Rosner's surgeries were experimental, which was one aspect of the negligence claim against him. And Dr. Currie testified to another aspect of Dr.

Rosner's alleged negligence in that he allowed the hospital to market his services inaccurately. Given that the testimonies of these experts did bear to some extent upon issues concerning Dr. Rosner's negligence, we do not face the statutory construction issue defendants assert is present.

Accordingly, rather than applying de novo review, the only question here is whether the trial court abused its discretion in its award of costs. As plaintiff observes, the total award of $175,547.59 corresponds to the costs itemized in plaintiff's motion for the stenographic and videographic costs of taking depositions ($89,789.84) and the expert fees incurred to provide trial testimony ($85,757.75), both categories of costs allowable under statute. *See* N.C.G.S. § 7A-305(d)(10) ("Reasonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts."); *Id.* § 7A-305(d)(11) ("Reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings."). We cannot conclude that the trial court abused its discretion in its award of costs and we therefore affirm the Court of Appeals on this issue.

Defendants' remaining arguments are based upon our allowing their petition for discretionary review on the following issues:

> ADDITIONAL AND ALTERNATIVE ISSUES TO BE BRIEFED
>
> I.     The trial court erroneously granted directed verdict against Defendants-Appellants on their

contributory negligence defense where the evidence showed Ms. Justus' medical problems including kyphosis were caused by her failure to follow medical advice and continue a course of treatment or seek treatment for worsening symptoms.

II. The Court of Appeals erroneously granted Plaintiff a partial new trial on the sole issue of damages where: (A) Plaintiff did not challenge the jury's damage calculation; and (B) Plaintiff's efforts to overturn the jury verdict implicated the entire verdict requiring a new trial on both liability and damages.

The dissenting opinion of the Court of Appeals, on which the Notice of Appeal was based, concurred with the majority's holding that the trial court did not err in granting directed verdict on contributory negligence; that issue is raised by Issue I above in defendants' petition for discretionary review. As to this issue, we now conclude that discretionary review was improvidently allowed.

In their argument in support of Issue II above, defendants contend that the Court of Appeals erroneously remanded for a new trial on damages only. The dissenting opinion specifically agreed with the majority's conclusion that the trial court erred in altering the amount of damages to be awarded. The dissenting opinion, however, did not address the following portion of the majority opinion:

> Rule 59(a) authorizes a new trial limited to issues that do not affect the entire verdict, such as, in this case, damages. Accordingly, we remand this matter to the trial court for a new trial on the issue of damages only. Defendant is not restricted from presenting any evidence which bears on plaintiff's alleged damages and Pamela Justus's failure to mitigate her damages.

*Justus*, ___ N.C. App. at ___, 802 S.E.2d at 153.

As to the second issue in defendant's petition for discretionary review, we conclude that the Court of Appeals was within its authority to vacate the trial court's amended judgment and order that a new trial be held with respect to the issue of damages. In seeking relief from the original judgment, plaintiff relied upon N.C.G.S. § 1A-1, Rule 59(a), which authorizes a trial judge to grant "[a] new trial" "to all or any of the parties and on all or part of the issues" for a number of different reasons. For the reasons stated by the Court of Appeals, we conclude that the trial court erred by simply striking the jury's mitigation determination and entering judgment in favor of plaintiff and against defendant in the amount of the jury's damages award. *Bethea v. Town of Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam) (holding that, while "the judge should have set aside the verdict . . . if he deemed it against the weight of the evidence or considered the damages excessive," instead, "he attempted to change the verdict, . . . and this he could not do" (citing *Winn v. C.W. Finch & Son*, 171 N.C. 272, 277, 88 S.E. 332, 334-35 (1916))). Moreover, we see no reason why the Court of Appeals was required to remand this case to the trial court for a determination either of whether relief should be granted at all or whether to grant a full or partial new trial.

While we are unaware of any decision of this Court involving a fact pattern identical to the unusual one here, even a cursory examination of the record reveals

that the trial court determined that plaintiff was entitled to relief from what the jury

did when it greatly reduced the damages awarded due to Pamela's alleged failure to

mitigate. Furthermore, the plain language of N.C.G.S. § 1A-1, Rule 59(a) states

explicitly that, once that determination had been made, the only relief that the trial

court may award to plaintiff is a new trial. Because this one and only remedy was

available to the trial court, and because the trial court's substantive decision that

plaintiff was entitled to relief from the jury's original verdict has not been disturbed

on appeal, we see no reason why this case should be remanded to the trial court to

choose between awarding plaintiff a new trial or denying plaintiff any relief from the

jury's verdict at all.[4] As a result, given that the trial court has already decided that

---

[4] Although we have stated on many occasions that, "[w]here a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light," *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979) (citing 1 Strong's North Carolina Index 3d: *Appeal and Error* § 63), we do not believe that this principle has any bearing upon the proper resolution of this issue. Instead, the "misapprehension" rule has typically been applied to require the remanding of trial court decisions concerning issues in which either the exercise of discretion was appropriate, *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) (overturning a trial court's decision to deny a motion for leave to amend a complaint to add an additional third-party defendant based upon the mistaken belief that none of the claims asserted in the plaintiffs' original complaint survived the defendants' summary judgment motion); *Chantos*, 298 N.C. at 251-52, 258 S.E.2d at 337-38 (overturning a trial court's refusal to set aside the verdict as against the greater weight of the evidence based upon the mistaken belief that this Court had determined that the issue in question could only be resolved by a jury), or to resolve a disputed issue of substantive law in light of the relevant facts, *Hanford v. McSwain*, 230 N.C. 229, 233-34, 53 S.E.2d 84, 87-88 (1949) (overturning a trial court decision denying a defendant's request for relief from a judgment because the defendant had failed to show the existence of a meritorious defense when the defendant had, in fact, demonstrated the potential existence of such a defense); *McGill v. Town of Lumberton*, 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939) (overturning an Industrial Commission decision to deny an application for workers' compensation benefits on the grounds that the Commission

relief should be afforded to plaintiff and given that the trial court's only option was to award a new trial in whole or in part in the event of such a determination, we conclude that the Court of Appeals had ample authority to order implementation of the relief that could be properly afforded to plaintiff on remand.

In addition, we conclude that the Court of Appeals did not err by awarding plaintiff a new trial on the issue of damages only. This Court has previously held that, in the event that a reviewing court determines that a trial court has erred ruling on a motion made pursuant to N.C.G.S. § 1A-1, Rule 59(a), the reviewing court has the authority to determine the scope of the new trial that should be awarded even though the trial court did not address that issue. *Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974) (overturning the trial court's decision to deny the plaintiff's motion for a partial new trial predicated upon an inconsistent jury verdict and ordering a full new trial on the grounds that "[i]t is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial" (quoting *Table Rock Lumber Co. v. Branch*, 158 N.C. 251, 253, 73 S.E. 164, 165 (1911))). In addition, we are not persuaded that "the error in assessing damages tainted the entire verdict," making it "unfair to the defendant to order a partial new trial on the issue of damages alone." *Id.* at 569, 206 S.E.2d at

---

had failed to recognize the existence of a presumption that a compensable injury had occurred when the employee suffered a violent death). As a result of the fact that the trial court had no authority to grant any relief aside from a new trial, the "misapprehension" principle simply does not apply here.

196.  Unlike in *Robertson*, the jury here did not find, in essence, that a minor plaintiff who might or might not have been contributorily negligent and who suffered injuries that resulted in $1,970.00 in medical expenses was entitled to no compensatory damages at all.  Instead, the jury here was properly instructed to determine the amount of damages that plaintiff was entitled to recover only after having resolved the issue of liability.  *Housing, Inc. v. Weaver*, 305 N.C. 428, 443, 290 S.E.2d 642, 651 (1982) (noting, in upholding the trial court's decision to award a partial new trial on the issue of damages, that when the case was initially tried, "[t]he jurors were instructed further specifically to answer the question of liability *before considering the issue of the amount of damages*").  The jury then reduced the amount of damages awarded to plaintiff by what the trial court believed to have been an unjustified finding of "failure to mitigate" based upon a misapprehension of the steps plaintiff was required to take to properly mitigate her damages.  Despite the fact that the jury did not specify the theory upon which it found defendants to have been negligent, the record contains no indication that the applicable measure of damages would have varied depending upon the theory of liability that the jury found to have merit.  *Weyerhaeuser Co. v. Godwin Bldg. Supply Co.*, 292 N.C. 557, 564, 234 S.E.2d 605, 609 (1977) (requiring a full new trial, rather than a partial new trial on the issues of damages alone, on the grounds that "it is impossible for us to determine upon what theory the jury relied in finding a breach [of contract] and whether the different theories of breach would have resulted in different measures of damages").  The trial

court clearly did not believe that the jury's verdict with respect to the mitigation issue tainted its verdict on the liability issue, since it simply struck the jury's mitigation verdict without in any way disturbing the liability verdict. We see no reason to second-guess that determination or the Court of Appeals' decision to implement that determination in the proper manner. As a result, even though the $1.00 difference between the amount of the jury's damage award and the amount of the "failure to mitigate" offset that the jury deemed to be appropriate appears to be anomalous, nothing in the record persuades us that this anomaly stemmed from a compromise involving the issue of liability rather than the jury's acceptance of the argument that the trial court found to have been erroneously advanced by defendants' expert witnesses—specifically, that Pamela failed to properly mitigate her damages because she did not return to defendant Rosner for further treatment. Therefore, in light of the unusual facts disclosed by the record here, we cannot say that the Court of Appeals erred by awarding a partial, rather than a full, new trial in this case.

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the Court of Appeals to vacate the trial court's amended judgment and order a new trial with respect to the issue of damages and remand this case to that court for further remand to the Superior Court, Henderson County, for retrial. Moreover, we affirm the decision of the Court of Appeals on the issue of costs. As for Issue I in defendants' petition for discretionary review, we conclude that discretionary review was improvidently

allowed; accordingly, the Court of Appeals' disposition of this issue remains undisturbed. As for Issue II in defendants' petition for discretionary review, we affirm for the reasons discussed here.

AFFIRMED IN PART AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Chief Justice MARTIN concurring in part and dissenting in part.

I agree with the majority that the trial court did not abuse its discretion when it determined that plaintiff was entitled to some form of relief under North Carolina Rule of Civil Procedure 59(a)(7).[1]  I also agree with the majority, as well as both parties and the dissent, that the relief that the trial court ordered was not permitted under Rule 59 and that only a new trial, in whole or in part, could have been granted. I do not agree with the majority, however, that either we or the Court of Appeals should usurp the critical role of the trial court under Rule 59 and determine what parts of a new trial are justified in this complex medical malpractice case based on the cold appellate record.  In my view, once a trial court appropriately decides to grant a new trial, Rule 59 leaves the trial court in the best position to determine the scope of that new trial.  *See* N.C. R. Civ. P. 59(a) ("A new trial may be granted to *all or any* of the parties and on *all or part* of the issues") (emphasis added).  Once the Court of Appeals determined that the trial court misapprehended the law in this case by choosing relief that cannot be granted after a jury trial under Rule 59, it would uphold best practices for the Court of Appeals (and this Court) to remand the case for reconsideration under the proper legal standard.

---

[1] Rule 59 provides that a new trial may be granted on several grounds, including the "[i]nsufficiency of the evidence to justify the verdict or [when] the verdict is contrary to law."  N.C. R. Civ. P. 59(a)(7).

In this case, after a jury verdict, plaintiff filed a motion under Rule 59 seeking an amended judgment or, in the alternative, a new trial on the issue of damages. The trial court granted the motion and amended the judgment, rather than granting a new trial. But, as the Court of Appeals properly held and no party challenges here, the trial court misapprehended the applicable law when it amended the judgment. *See Justus v. Rosner*, ___ N.C. App. ___, ___, 802 S.E.2d 142, 152 (2017). While Rule 59 establishes grounds that allow a trial court to grant a new trial "on all or part of the issues," Rule 59 does not let the court "direct the entry of a new judgment" after a verdict by a jury. *See* N.C. R. Civ. P. 59(a). The rule allows entry of a new judgment only "in an action tried *without* a jury." *See id.* (emphasis added).

When this Court (or any court acting as an appellate court) finds that a trial court's ruling on a motion is based on a misapprehension of law, that ruling should be vacated or reversed and the case should be remanded to the trial court to decide the motion according to a proper understanding of the law. *See Concerned Citizens of Brunswick Cty. Taxpayers Ass'n v. State ex rel. Rhodes*, 329 N.C. 37, 54-55, 404 S.E.2d 677, 688 (1991) ("When the order or judgment appealed from was entered under a misapprehension of the applicable law, the judgment, including the findings of fact and conclusions of law on which the judgment was based, will be vacated and the case remanded for further proceedings."). We have applied this rule, for instance, when a trial court misapprehended one factor in a multi-factor test, which, in effect, led the trial court to apply the wrong legal rule, *see Concerned Citizens*, 329 N.C. at

45-46, 404 S.E.2d at 682-83; when a trial court denied, under a misapprehension of law, a motion to terminate a requirement to register as a sex offender, *see State v. Moir*, 369 N.C. 370, 389-90, 794 S.E.2d 685, 698-99 (2016); when a trial court necessarily applied an incorrect articulation of the law of judicial estoppel, *see Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 38, 591 S.E.2d 870, 894 (2004); and when a trial court mistakenly concluded that it had no discretion to extend the time for service of a summons, *Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.*, 322 N.C. 271, 277, 367 S.E.2d 655, 658 (1988). I see no compelling reason for us to depart from this rule here.[2]

Here, after a jury verdict in a complex medical malpractice trial, the trial court found that Rule 59 relief was warranted, but then amended the judgment—a form of relief that Rule 59 does not permit after a jury trial. In doing so, the trial court misapprehended the law as to what relief Rule 59 would allow in this case. Because, here, the trial court only had the discretion to order "[a] new trial . . . on all or part of

---

[2] Although this Court has previously stated that "[i]t is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial," *Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974) (quoting *Table Rock Lumber Co. v. Branch*, 158 N.C. 251, 253, 73 S.E. 164, 165 (1911)), I am skeptical of the application of Rule 59 discretionary authority here. No one can seriously dispute that the trial court is in the best institutional position to exercise the type of discretionary authority envisioned by Rule 59(a). Moreover, I do not see how the majority can possibly ensure, in its order for a partial new trial on damages only based on this cold record, that "no possible injustice can be done to either party." *Id.* Finally, even a casual observer would quickly discern that *Robertson* relies on *Table Rock*, a case that precedes both the state and federal rules of civil procedure.

the issues," N.C. R. Civ. P. 59(a), we should remand this case to the trial court so that the trial court may determine which issue(s) require a new trial. In this case, that means the trial court should determine if the new trial should address liability, damages, mitigation, or some combination of these and the myriad other issues decided by the jury. As appellate courts, both we and the Court of Appeals should be mindful of our appellate role, which in this instance means exercising restraint and reviewing the trial court's discretionary decision under Rule 59. In doing so, we can identify that the trial court ordered impermissible relief under Rule 59 and that the only permissible relief in this case would have been a new trial, in whole or in part. But we should not then substitute our own discretion—or encourage the Court of Appeals to do so—to determine, in the first instance, the *scope* of the new trial.

This standard of appellate review is not just more consistent with our institutional role as an appellate court. It also squares with the reason that appellate courts generally review Rule 59 orders for abuse of discretion instead of de novo— namely, that the trial court is better positioned to exercise the discretion that this standard of review vests in it. We have previously held that determining if a verdict has "been given under the influence of passion or prejudice," N.C. R. Civ. P. 59(a)(6), requires more than interpreting a cold record. It requires a complete understanding of the nuances and subtleties of the entire proceeding—something which is only available to the judicial officer who presided over the trial. *See Worthington v. Bynum*, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982) (plurality opinion) (recognizing

that "[d]ue to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observances of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best determining what justice requires").  Similar reasoning applies to other grounds listed in Rule 59.  For example, the trial judge who evaluated the evidence when crafting jury instructions is in the best position to determine if there was "[m]anifest disregard by the jury of the instructions of the court."  N.C. R. Civ. P. 59(a)(5).

The same logic applies to determining the scope of relief to be granted under Rule 59(a).  Once the trial court determines that one or more of the grounds for relief under Rule 59(a) have been shown, it uses the knowledge and experience gained from its unique vantage point to fashion an appropriate form of relief.  The trial court may have to determine, for example, which issues were infected by problematic evidence.  That determination would affect the proper scope of the new trial—whether it needed to cover damages, liability, mitigation, or some combination of issues.  In other words, because the *scope of the relief* to be granted under Rule 59 is so closely linked to the *decision to grant* Rule 59 relief, it is generally best for the trial judge to decide both questions in the first instance, and for those decisions to then be reviewed only for abuse of discretion.  *Cf. Worthington*, 305 N.C. at 487, 290 S.E.2d at 605 ("We believe that our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the

necessity for a new trial."). This is especially true in this case, where the trial court has found multiple grounds for relief under Rule 59(a), while we only consider the legal sufficiency of one.

Admittedly, no party has raised the issue of whether an appellate court should substitute its own discretion to determine the scope of a new trial under a Rule 59 motion in this case. That is not surprising. The parties in this case want the issue to be decided *in their favor*; they likely care little, if they care at all, about *which court* decides the issue. But, as this State's appellate court of last resort, we should care about the role of the trial courts and their " 'institutional advantages' over appellate courts in the 'application of facts to fact-dependent legal standards.' " *Whitacre P'ship*, 358 N.C. at 38, 591 S.E.2d at 894 (quoting *Augur v. Augur*, 356 N.C. 582, 586, 573 S.E.2d 125, 129 (2002)). Otherwise, we leave it to parties appearing before us to determine the scope of appellate remedial authority as they alone see fit. Put simply, we should be vigilant to protect the salutary practice of allowing our trial courts to make this type of discretionary decision under Rule 59 in the first instance.

We should not depart from our customary appellate role here. Now that we have corrected the trial court's misapprehension of law, it would be best to let that court exercise its discretion within its proper bounds—discretion that would, of course, be subject to appellate review in the ordinary course for abuse of discretion. I therefore concur in part and dissent in part from the majority opinion.

*Martin, C.J., concurring in part and dissenting in part*

Justice JACKSON joins in this opinion.

Justice NEWBY dissenting.

Jury trials constitute the bedrock of our common law system. Since 1776 our state constitutions have safeguarded the right to a trial by jury. Thus, trial courts have always given great deference to juries' decisions. Only in limited, rare circumstances will courts invade the province of the jury. We afford particular deference to juries when cases have been fairly and fully litigated and a verdict is returned in the form of a general finding, not referencing any particular theory of liability or damages on which the jury made its determination. When the trial court takes the unusual step of overturning a jury's verdict, it must do so in a well-reasoned, legally sound manner. If the court proceeds under a misapprehension of law, the role of the appellate court is to correct the error and then return the matter to the trial court to proceed again, this time with the correct legal basis.

In this case, over the course of a two-month trial, the jury considered a complex medical malpractice case involving several parties. The jury heard multiple expert witnesses testify about numerous questions of liability and damages. In its instructions, based on the evidence, the trial court presented the jury with fifteen theories of negligence against defendant Rosner as well as an instruction to consider plaintiff's legal duty to mitigate her damages. Though the jury found defendant Rosner negligent, it did not specify upon which of those theories it relied. Despite the finding of negligence, the jury significantly reduced the damages awarded to plaintiff, concluding plaintiff failed to mitigate her damages. During this lengthy trial,

plaintiff did not object to the mitigation evidence. Moreover, plaintiff furnished the language generally used for the trial court's jury instruction on mitigation. After the jury issued the verdict, plaintiff asked the trial court to modify the amount of damages. The trial court, laboring under a misapprehension of law, revised the damages awarded to plaintiff. Indisputably, this revision was error. Upon review the Court of Appeals should have accurately set forth the law and remanded the case to the trial court to make an informed post-trial determination; instead, the appellate court assumed the role of the trial court and crafted a different remedy for plaintiff: a new trial solely on damages. With little analysis, the majority now compounds this error by giving unwarranted deference to the Court of Appeals' decision to grant a new trial solely on damages despite the findings by the trial court which support a completely new trial. Because I believe these actions constitute an improper invasion of the roles of the jury and the trial court, I dissent.

On 12 June 2003, three years after her first surgery, plaintiff[1] filed a complaint against defendant Rosner, his medical practice, Michael J. Rosner, M.D., P.A.,[2] Fletcher Hospital, Inc. d/b/a Park Ridge Hospital, Adventist Health System, and

---

[1] Though plaintiff Pamela Justus initiated the action and underwent the surgeries at issue, after her death during the pendency of litigation, the administrator of her estate was substituted as plaintiff in this action. For simplicity, the term "plaintiff" encompasses both and should be read in context.

[2] For simplicity, defendant Michael J. Rosner, M.D. and his medical practice Michael J. Rosner, M.D., P.A. are referred to as "defendant Rosner" throughout.

Adventist Health System Sunbelt Healthcare Corporation.  The complaint included claims for negligence, lack of informed consent, fraud, loss of consortium, and willful and wanton conduct.  Plaintiff later amended the complaint to include claims for conspiracy and wrongful death.  Plaintiff advanced fifteen theories of how defendant Rosner was negligent, which included performing unnecessary and medically unsound procedures, failing to obtain informed consent and adequately inform plaintiff of the nature of the surgical procedures, misleading plaintiff about her condition and the necessity of the procedures, and conspiring with the hospital to dishonestly market the surgical procedures at issue.  Plaintiff contended that the hospital defendants were similarly negligent in failing to monitor these procedures or take actions to prevent them, that the hospital defendants knew or should have known Rosner was performing unnecessary surgeries, and that all defendants conspired, *inter alia*, to promote their reputations and enhance their profits from these procedures.

During the almost two-month trial in August and September 2014, defendant Rosner presented evidence that the surgeries were necessary and in line with the standard of care for neurosurgeons in the community, and that plaintiff knew and consented to the procedures despite the commonly known risks associated with them. Throughout trial defendant Rosner introduced evidence of plaintiff's failure to mitigate damages, including plaintiff's failure to seek appropriate follow-up treatment, failure to properly address her pre-existing and ongoing health issues, and

her continued smoking before surgery and post surgery.[3]  While various witnesses indicated that plaintiff's conditions worsened when she did not follow up with Rosner, defendant presented a plethora of evidence about plaintiff's general failure to pursue proper care in a timely manner.[4]

For example, on recross-examination, one of defendant's expert witnesses testified, "So the fact that [plaintiff's deformity] was chin on chest was because it went unaddressed for about three years before the time she presented to [Dr.] Coric.  If she had been following up, as she should have, it would have been detected that she was developing a post-laminectomy kyphotic deformity and she would have had the appropriate surgery much sooner than when she presented with a chin-on-chest deformity."  Another one of defendant's expert witnesses testified on cross-examination that he believed that plaintiff was not injured by the surgeries, which actually helped an ongoing condition, but that plaintiff "had a progressive descending spiral . . . and didn't get any care" for her slowly declining condition.  A third expert testified on direct examination that, had plaintiff received physical therapy and worn

---

[3] The allegations that plaintiff failed to mitigate her damages primarily related to plaintiff's injury arising from her inability to support her head, i.e., kyphosis or chin-on-chest deformity that developed post surgery, and involved whether plaintiff delayed seeking appropriate and timely preventative treatment after her procedures.

[4] The majority opinion states that plaintiff "saw numerous doctors for diagnosis and treatment of her neck condition" following her surgeries.  Most of these appointments with pain doctors, however, only addressed plaintiff's symptoms.  The record reflects plaintiff's being seen at Wake Forest Baptist and Duke University Hospitals during the critical period after she left Rosner's care, but plaintiff did not properly follow up with either.

a neck brace, her condition "could have been avoided probably." Over the course of this multi-week trial, plaintiff's counsel did not object to any of the failure to mitigate evidence as misleading, and the trial court did not intervene.

At the jury charge conference, defendant argued that sufficient evidence existed to show plaintiff was contributorily negligent. While plaintiff's counsel objected to any proposed instruction on contributory negligence, plaintiff's counsel gave extensive input on the mitigation instructions and jury verdict form. Several times, plaintiff's counsel requested to add language to the jury instruction referencing the reasonableness of plaintiff's failure to follow up specifically with Dr. Rosner. The trial court agreed to give a modified version of the mitigation instruction requested by plaintiff, instructing the jury on the nature of plaintiff's duty to mitigate damages.

After the charge conference, the trial court instructed the jury, *inter alia*, that it must determine whether defendant Rosner was negligent. In doing so, the trial court submitted fifteen theories on which the jury could find defendant liable, instructing the jury that it could find defendant liable if it determined that defendant:

> 1: Performed unnecessary surgery on Pamela Justus;
>
> 2: Performed surgery on Pam Justus which was not medically indicated by imaging studies;
>
> 3: Performed surgery on Pam Justus which was not medically indicated by clinical signs and symptoms;
>
> 4: Performed surgery on Pam Justus without first obtaining adequate informed consent;

5: Misleading Pam Justus as to her condition regarding radiographic information;

6: Obtained Pam Justus's consent to surgery by misrepresenting that the surgery was necessary;

7: Fraudulently induced Pam Justus to undergo surgery that was not medically indicated;

8: Performed experimental surgery on Pam Justus;

9: Performed surgery on Pam Justus without adequate peer review and/or oversight;

10: Performed traditional surgery on Pam Justus for nontraditional reasons;

11: Performed surgeries on Pam Justus for conditions not treatable by surgery;

12: Failed to apply evidence-based medicine in treating Pam Justus;

13: By allowing the Hospital to dishonestly market his surgeries;

14: Conspired with the Hospital defendants to perform medically unnecessary surgeries on Pam Justus and others similarly situated at Park Ridge Hospital;

And 15: Failed to assure that Pam Justus was aware of the controversial nature of the diagnosis claimed by Dr. Rosner as a reason for such surgery.

Having received input from and consent of plaintiff's counsel, the trial court also instructed the jury that it should determine "[b]y what amount, if any, should the plaintiffs' actual damages be reduced because of Pamela Justus's unreasonable

failure to avoid or minimize her damages?" The trial court then gave the following mitigation instruction, which is a slightly modified version of the pattern jury instruction:

> A person injured by the negligent conduct of another is nonetheless under a duty to use that degree of care which a reasonable person would use under the same or similar circumstances to seek treatment to get well and to avoid or minimize the harmful consequences of her injury. A person is not permitted to recover for injuries she could have avoided by using means which a reasonably prudent person would have used to cure her injury or alleviate her pain.
>
> However, a person is not prevented from recovering damages she could have avoided unless her failure to avoid those damages was unreasonable.
>
> If you find that a healthcare provider advised the plaintiff to follow up in her care and treatment, you would not necessarily conclude that Pamela Justus acted unreasonably in declining such advice. In determining whether Pamela Justus' conduct was reasonable, you must consider all of the circumstances as they appeared to Pamela Justus at the time she chose not to follow the healthcare provider's advice.
>
> These may include the financial condition of the plaintiff, the degree of risk involved, the amount of pain involved, the chances for success, the benefits to be obtained from the procedures and treatment, the availability of alternate procedures and treatment, or the knowledge or lack of knowledge of the plaintiff Pamela Justus.

On 25 September 2014, the jury returned its verdict finding defendant Rosner liable under some unspecified theory of negligence but not liable for all other claims

against him. The jury also found no liability against any other defendants. Though the trial court instructed the jury on numerous theories of negligence and several factors of mitigation, the jury verdict sheet only included the following questions related to defendant Rosner:

> 1. Was Pamela Justus injured by the negligence of the defendant, Michael J. Rosner, M.D.? (Answer "YES" or "NO" in the space provided below.)
>
> ANSWER: <u>Yes</u>
>
> . . . .
>
> 3. Was the death of Pamela Justus caused by the negligence of the defendant, Michael J. Rosner, M.D.? (Answer "YES" or "NO" in the space provided below.)
>
> ANSWER: <u>No</u>
>
> . . . .
>
> 5. Was the plaintiff damaged by the fraud of the defendants?: (A) Michael J. Rosner, MD; . . . . (Answer this issue "Yes" or "No" as to each of the . . . defendants.)
>
> A. Michael J. Rosner MD  <u>No</u>
>
> . . . .
>
> 6. Did the defendants take advantage of a position of trust and confidence to bring about the surgeries of Pamela Justus? (Answer this issue "Yes" or "No" <u>only</u> as to any Defendant for which you answered "NO" in Issue No. 5 above.)
>
> A. Michael J. Rosner MD  <u>No</u>
>
> . . . .

If you answered Issue No. 6 "YES" as to any Defendant, then you must answer Issue No. 7 as to that Defendant(s).

7. Did the defendants act openly, fairly and honestly in bringing about the surgeries of Pamela Justus? (Answer this issue "Yes" or "No" as to each of the following defendants.)

   A. Michael J. Rosner MD _____

. . . .

8. Did Dr. Rosner conspire with Adventist Health System and/or Park Ridge Hospital to allow or enable Dr. Rosner to perform on members of the public, including Pamela Justus, surgeries which were unnecessary or not medically indicated with the intent and purpose of generating income for Dr. Rosner and Park Ridge Hospital? (Answer "YES" or "NO" in the space provided below.)

   ANSWER: No

While the jury also indicated on its verdict form that plaintiff suffered unspecified damages totaling $512,162.00, the jury reduced that award by $512,161.00 due to plaintiff's "unreasonable failure . . . to avoid or minimize her damages." The trial court entered judgment accordingly, awarding plaintiff $1.00.

On 30 October 2014, plaintiff moved to alter or amend the verdict, citing Rule 59(a)(7). *See* N.C.G.S. § 1A-1, Rule 59(a)(7) (2017) ("Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law").[5] Specifically, in her motion

---

[5] Though plaintiff also cited Rule 59(a)(5) in her initial motion, plaintiff's counsel expressly stated that he was abandoning this argument at the trial court hearing. *See* N.C.G.S. § 1A-1, Rule 59(a)(5) (2017) ("Manifest disregard by the jury of the instructions of the court").

plaintiff asserted that defendants' expert witness testimony led the jury to believe

that plaintiff had a duty to return to Dr. Rosner to mitigate her damages, which

plaintiff was not required to do by law. The motion argued:

> 8. The Plaintiff alleges and contends that the verdict of the jury as to [the mitigation issue] was and is contrary to the greater weight of credible testimony; that the jury was misled by unreliable testimony into rendering an erroneous verdict. . . .
>
> . . . .
>
> 10. That the verdict as to [the mitigation issue] is contrary to law.
>
> 11. That, as to [the mitigation issue], the burden is upon the Defendant(s). As a matter of fact and of law alike, the Defendants failed to carry that burden, for they presented legally insufficient evidence to support the jury's finding as to [mitigation]. Defendants' sole evidence that [plaintiff] supposedly failed to mitigate her damages is that she did not allow Dr. Rosner to perform corrective surgery. As a matter of law, however, she had no duty to seek medical attention specifically from Dr. Rosner rather than from other health care providers.

Thus, plaintiff requested that the court amend the verdict to award $512,161.00 in

damages or, alternatively, order a new trial on damages. In addition, plaintiff moved

for costs for, *inter alia*, expenses related to expert witness depositions and trial

testimony.

On 3 March 2015, the trial court entered an order granting plaintiff's motion

to alter or amend the judgment by setting aside the jury's mitigation finding and

entering judgment for $512,162.00. The trial court determined that "the overall

impression created by [the expert] witnesses (and thus communicated to the jury) is that [plaintiff] had an obligation to return specifically to *Dr. Rosner*; and that, by failing to do so, she allowed her condition to worsen." The trial court further found that "[t]here was no evidence presented that [plaintiff] unreasonably delayed trying to have her problems diagnosed and corrected." Thus, the trial court noted that, "[g]iven the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages."

Based on these findings of fact, the trial court made the following conclusions of law:

> 3. The testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading.
>
> 4. The misleading effect of the foregoing testimony was compounded by its repetition from four different expert witnesses.
>
> 5. Dr. Rosner presented no legally competent evidence sufficient to support a finding that [plaintiff] unreasonably failed to mitigate her damages.
>
> 6. This Court committed prejudicial error in submitting [mitigation] to the jury.
>
> 7. The jury's $1.00 damage award is manifestly inadequate.
>
> 8. The jury appears to have made its initial damage

finding ($512,161.00) under the influence of passion or prejudice, for the finding entirely omits any sum for pain and suffering despite the uncontroverted evidence that [plaintiff] experienced severe pain and suffering.

9. The jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts.

10. Even aside from the lack of evidence to support *any* mitigation finding at all, the influence of passion or prejudice is further manifested in the grossly excessive *amount* of the jury's mitigation finding.

Believing it had the authority to modify the judgment as requested by plaintiff, the trial court revised the amount of damages from $1.00 to $512,162.00. The trial court did not award a new trial for damages or make any alternative holding. Finally, the trial court granted plaintiff's motion for costs, awarding plaintiff $175,547.59, the amount that plaintiff requested for depositions and all experts' trial testimony.

In reviewing the trial court's determination, the Court of Appeals unanimously concluded that the trial court erred by modifying the judgment. *Justus v. Rosner*, ___ N.C. App. ___, ___ n.5, ___, 802 S.E.2d 142, 149 n.5, 152-53 (2017). Nonetheless, the majority crafted a new remedy in awarding a new trial solely on damages. *Id.* at ___, 802 S.E.2d at 152-53. The Court of Appeals believed that, though the trial court had proceeded under a misapprehension of law, based on the trial court's findings of fact and conclusions of law, this new remedy was appropriate. *Id.* at ___, 802 S.E.2d at 152-53. In its analysis the majority added to plaintiff's rationale as presented to the

trial court under Rule 59(a)(7) and considered additional grounds under Rule 59(a)(6). *Id.* at \_\_\_, 802 S.E.2d at 152. The Court of Appeals majority recognized that the trial court had improperly relied on Rule 59(a)(8), allowing the court to order a new trial for an "[e]rror in law occurring at the trial," because plaintiff did not, as required by that provision, object to the evidence at any point during trial. *Id.* at \_\_\_, 802 S.E.2d at 152. Ultimately, the Court of Appeals vacated the trial court's modified damages award and granted a new trial on damages only. *Id.* at \_\_\_, 802 S.E.2d at 144.

Though the dissenting judge agreed that the trial court erred by rewriting the damages award, he argued that plaintiff was not entitled to relief on any Rule 59 grounds. *Id.* at \_\_\_, 802 S.E.2d at 156 (Tyson, J., concurring in part and dissenting in part). The dissent noted that, in granting plaintiff relief, the trial court "substitute[d] its judgment for that of the jury's without knowing which theory or theories of negligence the jury's verdict relies upon." *Id.* at \_\_\_, 802 S.E.2d at 157. Moreover, the dissent noted that plaintiff's failure to "seek appropriate medical treatment to mitigate her damages" is a "proper area of expert medical testimony" that is solely a factual issue appropriate for the jury to decide. *Id.* at \_\_\_, 802 S.E.2d at 158. The dissent also asserted that plaintiff and the trial court put "their own emphasis upon the questions and answers posed to Dr. Rosner's experts" when, in fact, "[t]he expert witnesses *did not state* and the jury *was not instructed* that [plaintiff] was required to return specifically to Dr. Rosner." *Id.* at \_\_\_, 802 S.E.2d at 159. Viewed in light of all the evidence, the dissent opined that the "un-objected to

testimonies of defendant's medical experts on areas within their expertise does not support the trial court's decision to set aside the jury verdict." *Id.* at ___, 802 S.E.2d at 159. Therefore, the dissent would vacate the trial court's order and remand for that court to reinstate the jury's verdict. *Id.* at ___, 802 S.E.2d at 160.

Defendant Rosner appealed the decision of the Court of Appeals based on the dissenting opinion. This Court also granted defendant Rosner's petition for discretionary review on the issue of whether, if a new trial is necessary, the new trial should encompass both damages and liability.[6]

The majority agrees that the trial court erred in some of its rationale and in its granting a revised damages award. The majority nonetheless, with little analysis, upholds the appellate court-created remedy of a new trial as to damages only by mistakenly applying a deferential standard of review. As the cases hold, trial court decisions receive a deferential standard of review, *not* those of the Court of Appeals. Thus, with only conclusory statements, the majority allows the remedy of a new trial solely as to damages. In reaching its conclusion, the majority contravenes precedent by wrongly invading the jury room and somehow pinpointing the single theory of

---

[6] This Court likewise granted defendant Rosner's petition for discretionary review regarding the issue of contributory negligence. Defendant Rosner argued that the trial court should have instructed the jury on contributory negligence because, in his view, much of what plaintiff conceded was mitigation evidence actually supported a defense of contributory negligence. This Court decides that it improvidently allowed discretionary review of the contributory negligence issue.

negligence the jury chose. After selecting one of the fifteen possible theories of negligence, the majority then determines the damages are "insufficient" under that particular theory but nonetheless concludes the verdict did not represent a compromise.

Because the trial court labored under a misapprehension of the law in its assessment of plaintiff's motion and its remedy, this Court should return the matter to the trial court for a proper review of plaintiff's motion. The trial court should limit itself to the legal grounds raised by plaintiff's motion and fairly assess the un-objected to evidence presented at trial. The trial court should not guess which theory of negligence the jury found, but should inquire whether any theory of negligence supports the jury's assessment of damages. Likewise, the trial court should not reweigh the mitigation evidence, but looking carefully at all of it, consider whether any evidence supports the jury's mitigation decision.

I.

While "[i]t is impossible to place precise boundaries on the trial court's exercise of its discretion to grant a new trial," a trial court's decision to interfere with a jury verdict should be made with "great care and exceeding reluctance." *In re Will of Buck*, 350 N.C. 621, 626, 516 S.E.2d 858, 861 (1999) (emphasis omitted); *see also Bird v. Bradburn*, 131 N.C. 488, 489, 42 S.E. 936, 937 (1902) (noting that a trial judge "will be reluctant to set his opinion against that of the twelve [jurors]" (parentheses

omitted)).  "This is so because the exercise of this discretion sets aside a jury verdict and, therefore, will always have some tendency to diminish the fundamental right to trial by jury in civil cases which is guaranteed by our Constitution."  *In re Buck*, 350 N.C. at 626, 516 S.E.2d at 861; *see also Worthington v. Bynum,* 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982) ("[T]rial judges of this state have traditionally exercised their discretionary power to grant a new trial in civil cases quite sparingly in proper deference to the finality and sanctity of the jury's findings."); *State v. Little*, 174 N.C. 800, 802, 94 S.E. 1, 2 (1917) ("It is the province of the jury to weigh the testimony and to sift the true from the false." (citations omitted)).

Rule 59 of the North Carolina Rules of Civil Procedure codifies the authority of a trial court to set aside a jury verdict by granting a new trial or altering or amending a jury verdict in limited circumstances.  *See* N.C.G.S. § 1A-1, Rule 59 (2017); *Bird*, 131 N.C. at 489, 42 S.E. at 936 (recognizing the trial court's inherent power to set aside a jury verdict as a matter of discretion).  Under Rule 59, the parties in a case may move for a new trial or an altered or amended judgment, or alternatively, the trial court may order a new trial on its own initiative so long as it does so "[n]ot later than 10 days after entry of judgment." N.C.G.S. § 1A-1, Rule 59(d). Specifically, Rule 59(a)(7) allows the trial court to grant a new trial "on all or part of the issues" when there is "[i]nsufficien[t] . . . evidence to justify the verdict or . . . the verdict is contrary to law."  *Id.*, Rule 59(a)(7).  A trial court should grant a motion under Rule 59(a)(7) in only "those exceptional situations where the verdict is contrary

to the evidence presented and [where the verdict] will result in a miscarriage of justice." *In re Buck,* 350 N.C. at 628, 516 S.E.2d at 862.

When a trial court properly addresses a Rule 59 motion, a trial court's action is reviewed only for an abuse of discretion. *See id.* at 625, 516 S.E.2d at 860-61 ("Like any other ruling left to the discretion of a trial court, the trial court's appraisal of the evidence and its ruling on whether a new trial is warranted due to the insufficiency of evidence is *not* to be reviewed on appeal as presenting a question of law."); *Worthington,* 305 N.C. at 487, 290 S.E.2d at 605 ("[A]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice."). We afford this deference because the trial court, unlike an appellate court, "active[ly] participat[es] in the trial," is "acquaint[ed] with the evidence presented," and observes all parties involved. *Worthington,* 305 N.C. at 487, 290 S.E.2d at 605.

A trial court abuses its discretion when it misapprehends the applicable law. *See, e.g., In re Estate of Skinner*, 370 N.C. 126, 139-40, 804 S.E.2d 449, 457-58 (2017). For instance, while Rule 59 affords the trial court the ability to alter or amend the verdict, the trial court may not increase the monetary judgment for a reason other than to award interest. *See Bethea v. Town of Kenly*, 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam) ("It is a cardinal rule that the judgment must follow the verdict, and if the jury have given a specified sum as damages, the court cannot

increase or diminish the amount, except to add interest, where it is allowed by law and has not been included in the findings of the jury." (first quoting 2 McIntosh, *North Carolina Practice and Procedure* § 1691 (2d ed. 1956); and then citing *City of Durham v. Davis*, 171 N.C. 305, 88 S.E. 433 (1916))).

When the trial court commits such an error of law, an appellate court should not usurp the role of the trial court; rather, the appropriate remedy is to vacate the order or judgment on that issue, state the law, and remand to the appropriate lower court to apply the correct legal standard. *See, e.g.*, *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) ("Since the judge's order was signed under a misapprehension of the law, we believe the better approach is to vacate the order and remand for reconsideration of plaintiffs' motion . . . in light of our opinion in this case . . . ."); *Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979) (reasoning that, when a trial judge misunderstood his authority under Rule 59, the proper remedy would be to remand the case to the trial court to make the appropriate determination); *Hanford v. McSwain*, 230 N.C. 229, 233, 53 S.E.2d 84, 87 (1949); *see also In re Skinner*, 370 N.C. at 146, 804 S.E.2d at 462 (Morgan, J., dissenting) (citations omitted).

It is clear that the trial court misapprehended the law by rewriting the damages award for reasons other than awarding interest. Acting under this misapprehension of law, the trial court made various findings of fact unsupported by the evidence, considered various Rule 59 grounds not argued by plaintiff to support

its decision, and crafted a legally invalid remedy. For example, the trial court relied on its findings that "passion or prejudice" permeated the jury's initial damage award and subsequent decision to reduce damages. Passion and prejudice, however, are not an appropriate consideration under plaintiff's Rule 59(a)(7) motion.[7] Rule 59 confines a trial court's consideration to the Rule 59 grounds asserted by a plaintiff.[8] Moreover, the trial court deemed evidence of plaintiff's attempt to receive follow-up treatment as "uncontroverted" to support its conclusion that there was a "lack of evidence to support *any* mitigation finding at all." Throughout the almost two-month trial, however, the parties debated and discussed in depth whether plaintiff took appropriate mitigation actions after the surgery. During the trial and charge conference the mitigation issue was central and clearly not "uncontroverted." Thus, the proper remedy when the trial court proceeded under a misapprehension of law is for the appellate court to state the applicable law and remand the case to the trial court to determine the motion under the proper legal standard.[9]

---

[7] Passion and prejudice are a proper consideration under Rule 59(a)(6) and in crafting the remedy of the scope of a new trial. *See* discussion infra II.

[8] If upon review the trial court determined of its own accord that different grounds warranted setting aside the verdict under Rule 59, it must have acted within ten days after its entry of judgment, which it did not do. Otherwise, the trial court is limited to the grounds specified by the moving party. *See* N.C.G.S. § 1A-1, Rule 59(d).

[9] Because the trial court's findings of fact and conclusions of law appear to be tainted by its misapprehension of law, the case should be remanded to the trial court. Nonetheless, for the reasons stated herein and in the dissenting opinion at the Court of Appeals, I think many of the trial court's findings of fact are unsupported and its conclusions of law are in error.

II.

Nonetheless, if a new trial is warranted, the majority also errs by upholding with little analysis the remedy of a new trial solely on damages instead of on all issues. "It is settled beyond controversy that it is entirely discretionary with the [Trial] Court . . . whether it will grant a partial new trial." *Table Rock Lumber Co. v. Branch*, 158 N.C. 251, 253, 73 S.E. 164, 165 (1911). A trial court will typically grant a partial new trial "when the error, or reason for the new trial, is confined to one issue, which is entirely separable from the others and it is perfectly clear that there is no danger of complication." *Id.* at 253, 73 S.E. at 165. Importantly, however, "[w]here it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case." *Robertson v. Stanley*, 285 N.C. 561, 569, 206 S.E.2d 190, 195 (1974) (quoting 58 Am. Jur. 2d *New Trial* § 27, at 213 (1971) [hereinafter *New Trial*]).

"Courts are reluctant to grant a new trial as to damages alone unless it is clear that the error in assessing damages did not affect the entire verdict." *Id.* at 568, 206 S.E.2d at 195. Moreover, "[a] new trial as to damages alone should not be granted where there is ground for a strong suspicion that the jury awarded inadequate damages to the plaintiff as a result of a compromise involving the question of liability." *Id.* at 569, 206 S.E.2d at 196 (alteration in original) (quoting M.C. Dransfield, Annotation, *Propriety of Limiting to Issue of Damages Alone New Trial*

*Granted on Ground of Inadequacy of Damages Awarded*, 29 A.L.R.2d 1199, § 10 (1953)).

This Court has previously recognized that a "grossly inadequate" award of damages may indicate "that the jury was actuated by bias or prejudice, or that the verdict was a compromise." *Id.* at 569, 206 S.E.2d at 195-96 (quoting *New Trial* § 27, at 213). "[W]here, in an action for personal injuries the severity of the injury was beyond contention, a verdict for a grossly inadequate sum was in itself almost a conclusive demonstration that it was the result, not of justifiable concession of views, but of improper compromise of the vital principles which should have controlled the decision." *Bartholomew & Co. v. Parrish*, 186 N.C. 81, 84, 118 S.E. 899, 900 (1923). In such a case "the court must set aside the verdict in its entirety and award a new trial on all issues." *Robertson*, 285 N.C. at 569, 206 S.E.2d at 196 (quoting *New Trial* § 27).

Here the jury was instructed on fifteen different theories of liability and multiple factors of mitigation. Though the jury found defendant negligent and initially awarded plaintiff damages totaling $512,161.00 (being comparable to the amount plaintiff submitted as her medical bills), the jury reduced plaintiff's damages to $1.00 due to her failure to mitigate. Such an award, depending on the theory of negligence, appears to be the exact type of "inadequate sum" of damages this Court has previously determined can indicate a compromise verdict. In addition, the jury found no liability against any other defendant, rejected plaintiff's claim that the

surgeries were performed as part of a conspiracy between these parties, and found defendant Rosner not responsible for plaintiff's death.  Given that plaintiff advanced fifteen different theories of negligence, including that defendant Rosner failed to properly inform plaintiff of the procedures and their risks and performed unnecessary surgeries, the jury's finding of negligence in conjunction with its $1.00 damage award may indicate various compromises.

Improper jury motive leading to an inadequate verdict appears to be the precise issue with which the trial court was concerned, evinced by its findings on three separate occasions that passion or prejudice permeated the jury award.  Likewise, the majority opinion agrees the damage award was insufficient.  It appears the trial court and majority acknowledge the presence of the precise factors indicating a compromise verdict, warranting a completely new trial.

Further, given this outcome, the jury may not have actually believed the theory on which it found defendant liable or concluded that its finding of negligence was more theoretical than practical, thereby leading jurors to issue a nominal damage award as the result of a compromise.  Similarly, the compromise was perhaps to find negligence but award only $1.00 in damages.  As such, the jury's verdict is tainted so that a new trial on damages only would not be proper.  Such a finding supports a new trial on all issues; it is impossible to say the finding of liability is untainted, but the damages amount is not.  *See Robertson*, 285 N.C. at 569, 206 S.E.2d at 196.

Nonetheless, the Court of Appeals creates a remedy of a new trial as to damages only. Then, at this Court, without analysis the majority grants the deference reserved for the trial court to the Court of Appeals' determination to create a new remedy. While the majority at this Court recognizes that a *trial court's* ability to set aside a judgment is reviewed for abuse of discretion, the majority now applies the same review to the Court of Appeals' decision to create its own remedy. The trial court, not the Court of Appeals, would be the proper court to determine whether plaintiff should receive a new trial and if so, on what issues. Nonetheless, this Court prefers to speculate as to what a fully informed trial court would do instead of simply allowing it to act.

The majority's decision further exacerbates the errors of the trial court and Court of Appeals by clearly invading the jury room, sifting through plaintiff's fifteen theories of negligence and award of damages, and speculating as to the jury's actual reasoning and conclusions. From the cold record, the majority makes these declarations: of the fifteen possible grounds for negligence, the jury found defendant liable on one particular ground, characterized by the majority as "perform[ing] unnecessary surgeries"; the majority's selected theory of negligence required damages for pain and suffering; the amount of damages awarded by the jury does not include any amount for pain and suffering; and the jury based its mitigation decision solely on plaintiff's failure to return specifically to Rosner. To reach these conclusions, the majority isolates several lines of testimony that occurred over an

almost two-month trial.  Because the record does not indicate the theory on which the jury made its decision, our jurisprudence is clear that this Court should not substitute itself for the jury and "presume to know" the theory upon which the jury relied. *McGill v. French*, 333 N.C. 209, 215-16, 424 S.E.2d 108, 111-12 (1993) (restating the well-established "principle that a reviewing court cannot appropriately determine, absent clear showing of record, upon what basis a jury renders its verdict" (citations omitted)); *id.* at 216, 424 S.E.2d at 112 ("We therefore hold that the Court of Appeals erred in assuming that the particular act of negligence upon which the jury based its verdict was defendant's alleged failure to inform the plaintiff of his cancer.")

Therefore, a new trial on all issues is particularly appropriate in this case because a new jury will not know the theory of negligence on which the jury relied and which corresponding damages may be appropriate.

## III.

When a trial court proceeds under a misapprehension of law, an appellate court should state the law and remand the case to the trial court for proper consideration. It is unclear whether, had the trial court correctly known the law, it would have awarded a new trial, and if so, whether it would limit a new trial solely to damages. Even given the majority's approach that a new trial is warranted, plaintiff should receive "a new trial [on] all of the issues." *Robertson*,  285 N.C. at 569, 206 S.E.2d at

195 (quoting *New Trial* § 27, at 213). As such, any review of costs would be premature at this time.

The Court of Appeals erred in crafting its own remedy, a new trial on damages only, and this Court errs by applying a deferential standard to that remedy. If a new trial were justified, the trial should be on all issues. Accordingly, I respectfully dissent.